Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| AMARILIS SÓLIVAN SÁNCHEZ<br><br>EX PARTE<br><br>Peticionaria | TA2026CE00302 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso número:<br>CG2026CV00085<br><br>Sobre:<br>Petición de Orden de Relaciones Domésticas Calificada (QDRO) |
| --- | --- | --- |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 14 de abril de 2026.

Comparece la peticionaria, Amarilis Sólivan Sánchez, mediante el recurso de epígrafe y nos solicita que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 22 de enero de 2026, la cual fue notificada el día 27 del mismo mes y año. Mediante esta, el foro primario determinó que la petición de Orden de Relaciones Domésticas Calificada instada por la peticionaria no procedía en derecho.

Por los fundamentos que se exponen a continuación, expedimos el *certiorari* y revocamos la *Resolución* recurrida, a los fines de conceder el remedio solicitado por la peticionaria. Veamos.

### I

El 14 de enero de 2026, Amarilis Sólivan Sánchez (Sólivan Sánchez o peticionaria) compareció por derecho propio ante el foro primario e instó una *Petición* ex parte.[1] Mediante esta, la peticionaria

---

[1] Entrada Núm. 1 del caso núm. CG2026CV00085 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

solicitó una Orden de Relaciones Domésticas Calificada (QDRO, por sus siglas en inglés que responden a *Qualified Domestic Relations Order*). Ello, a los fines de dividir en partes iguales su cuenta de retiro de tipo 401k con su excónyuge y receptor alterno del plan, Almírcal A. Colón La Santa (Colón La Santa), de quien se divorció ante notario público en 2024. En específico, Sólivan Sánchez solicitó el remedio siguiente:

> Elevar la sentencia de escritura pública de mi divorcio a una sentencia declaratoria, ya que tengo que someter la forma QDRO para la división de mi 401k y la misma necesita un número de caso y ser firmada por el honorable juez. Una vez la forma QDRO esté firmada por el honorable juez, la misma será enviada a las oficinas correspondientes que manejan la división para que la otra parte pueda recibir su pago.

Tras evaluar la petición de epígrafe, el foro primario emitió una *Resolución* el 22 de enero de 2026, la cual fue notificada el día 27 del mismo mes y año.[2] Mediante esta, ordenó el archivo del caso, tras concluir que la solicitud no procedía en derecho. Asimismo, el foro *a quo* exhortó a la peticionaria a buscar orientación legal.

En desacuerdo, Sólivan Sánchez compareció nuevamente, esta vez por conducto de representación legal e instó una *Moción de Reconsideración y Petición Enmendada sobre Solicitud de Reconocimiento de Escritura de Divorcio*.[3] En esta ocasión, la peticionaria explicó que, el 6 de junio de 2024, otorgó junto a Colón La Santa una escritura pública de divorcio por consentimiento mutuo ante notario. Asimismo, explicó que una de las estipulaciones consignadas en la escritura pública dispone que las partes acordaron la división del plan de retiro 401(k) a nombre de Sólivan Sánchez, producto de su empleo en la empresa Amgen Manufacturing Limited y en el cual su excónyuge figura como receptor alterno.

---

[2] Entrada Núm. 2 del caso núm. CG2026CV00085 del SUMAC.
[3] Entrada Núm. 4 del caso núm. CG2026CV00085 del SUMAC.

Detalló que, conforme a la referida estipulación, la división de dicho plan de retiro debía implementarse mediante una QDRO. De este modo, aclaró que el administrador del plan de retiro requirió evidencia u orden judicial que permita implementar el acuerdo de división del plan conforme a la escritura, a fin de poder ejecutar la división pactada por las partes. Es decir, que el remedio solicitado es estrictamente para fines de la ejecución del acuerdo patrimonial ya contenido en la escritura y para cumplir con los requisitos administrativos del plan. A dicha moción, la peticionaria acompañó una declaración jurada suscrita por Colón La Santa en la que este suscribió la presentación de la Petición sobre Solicitud de Reconocimiento de Escritura de Divorcio.

Tras evaluar la solicitud de reconsideración y petición enmendada, el foro primario la declaró No Ha Lugar, mediante una *Resolución* emitida el 11 de febrero de 2026 y notificada al día siguiente.[4] En específico, razonó que "el asunto no es justiciable" y que "el divorcio se emitió conforme a derecho en Puerto Rico".

Por su parte, el 17 de febrero de 2026, la peticionaria volvió a comparecer, por conducto de su representación legal. En esta ocasión, presentó una *Moción Solicitando Expedición de Orden de Relaciones Domésticas Calificada (QDRO).*[5] Esencialmente, Sólivan Sánchez le solicitó nuevamente al foro primario una QDRO, a los fines de concretar el traspaso y titularidad a favor de Colón La Santa, del 50% de los activos habidos en su cuenta 401k, al 6 de junio de 2024, fecha en que se otorgó la escritura de divorcio.

Evaluada la referida moción, el foro *a quo* la declaró No Ha Lugar. Ello, mediante una *Resolución* que fue emitida y notificada el 17 de febrero de 2026.[6]

---

[4] Entrada Núm. 5 del caso núm. CG2026CV00085 del SUMAC.
[5] Entrada Núm. 7 del caso núm. CG2026CV00085 del SUMAC.
[6] Entrada Núm. 8 del caso núm. CG2026CV00085 del SUMAC.

Inconforme, el 11 de marzo de 2026, la peticionaria acudió ante este Foro mediante el recurso de epígrafe y señaló que el foro primario cometió el error siguiente:

> Abusó de su discreción el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar, sin fundamento jurídico alguno, la solicitud de expedición de una orden de relaciones domésticas calificada (QDRO) al amparo de la Sección 206(d) de la ley conocida como Employee Retirement Income Security Act del 1974, según enmendada (ERISA), 29 U.S.C. § 1056(d)(3), la cual únicamente puede ser emitida por un tribunal con jurisdicción cuando existe, como en el presente caso, una escritura de divorcio ante notario y una estipulación y acuerdos sobre divorcio por consentimiento mutuo que crea, reconoce y asigna a un beneficiario alterno derecho a recibir parte de los beneficios acumulados en un plan de retiro sujeto a ERISA, y cuyos términos cumplen con todos los requisitos de especificidad exigidos por la 29 U.S.C. § 1056(d)(3)(c).

Tras una evaluación preliminar del recurso ante nos, el 17 de marzo de 2026, emitimos una *Resolución*, que fue notificada al día siguiente. Mediante esta, y de conformidad con la Regla 83.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83.1,[7] le concedimos un término de diez (10) días a la Hon. Evyanne M. Mártir Hernández (jueza Mártir Hernández), Jueza del Tribunal de Primera Instancia, Sala Superior de Caguas, a cargo del caso de epígrafe, para que fundamentase el dictamen recurrido.

Así las cosas, el término concedido al foro primario para fundamentar la *Resolución* recurrida venció el 30 de marzo de 2026, sin que la jueza Mártir Hernández compareciera en cumplimiento de nuestra orden. En consecuencia, procedemos a disponer del asunto ante nuestra consideración.

## II

### A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,*

---

[7] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 117, 215 DPR __ (2025).

212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). En lo sustantivo, se le considera un recurso extraordinario, mediante el cual un foro revisor está facultado para enmendar los errores que cometió el foro revisado, cuando "el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley". Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491.

En cuanto al aspecto procesal de este recurso extraordinario, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 codifica la revisión de los dictámenes interlocutorios del Tribunal de Primera Instancia. Sin embargo, y a pesar de que la citada regla no lo contempla, el Reglamento del Tribunal de Apelaciones dispone expresamente que el *certiorari* es el recurso adecuado para revisar las resoluciones finales que emite el Tribunal de Primera Instancia, en casos de jurisdicción voluntaria. Véase, Regla 32(B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 32(B).[8]

En cualquiera de estos escenarios, es aplicable la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40,[9] en la medida que esta dispone los criterios que el foro revisor debe considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

---

[8] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 49, 215 DPR __ (2025).
[9] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025).

(A)    Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B)    Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C)    Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D)    Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)    Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)    Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). El Tribunal Supremo también ha expresado que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

En términos generales, el estatuto federal conocido como *Employee Retirement Income Security Act* de 1974, según enmendada, Pub. L. No. 93-406, 88 Stat. 829 (Ley ERISA) "es la disposición legal federal que regula todo lo relacionado a los planes de beneficios para empleados de patronos privados". *Iglesias*

*Saustache v. Calderón Félix,* 201 DPR 1, 6 (2018). En la Ley ERISA, "se establecen los estándares mínimos que deben cumplir los patronos privados que constituyan un plan de beneficios para sus empleados". *Íd.*

El concepto de Orden de Relaciones Domésticas Calificada (QDRO, por sus siglas en inglés, las cuales responden a *Qualified Domestic Relations Order*) se encuentra codificado en la Ley ERISA. En su sección 206, inciso (d), 29 U.S.C. § 1056, se disponen detalladamente las particularidades que reviste este tipo de remedio. Por ejemplo, entre las protecciones que se contemplan en la referida disposición, se encuentran la prohibición del pago, transferencia, cesión o enajenación de beneficios de un plan de retiro a una persona que no sea el beneficiario o su participante. Véase, *Iglesias Saustache v. Calderón Félix,* supra, págs. 6-7.

Según el Tribunal Supremo Federal, el objetivo de estas disposiciones sobre QDRO es la protección de excónyuges y sus hijos dependientes. *Boggs v. Boggs,* 520 U.S. 833, 849 (1997). Específicamente, el Alto Foro federal considera lo siguiente: "*The QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income.*" *Íd.,* pág. 854. En alusión específica a este tipo de mecanismo, el Alto Foro federal también indica que *una orden judicial* que satisface los criterios de la sección 206(d) de la Ley ERISA, *supra,* es lo que se conoce como un QDRO. *Kennedy v. Plan Adm'r for Du Pont Sav. and Inv. Plan,* 555 U.S. 285, 291 (2009).

En general, y según la Ley ERISA, una Orden de Relaciones Domésticas es cualquier sentencia, decreto u orden que: (1) se relacione con el sustento de menores, pago de pensión por divorcio o separación o derechos de propiedad matrimonial, a un cónyuge, excónyuge, menor u otro dependiente del participante y, (2) es

dictada conforme a las leyes que regulan las relaciones domésticas en un estado, incluyendo las disposiciones que rigen la propiedad en comunidad. Véase, sección 206 (d) de la Ley ERISA, 29 U.S.C. § 1056. No obstante, y también de conformidad con la Ley ERISA, una QDRO es una Orden de Relaciones Domésticas que satisface los requerimientos siguientes:

> 1. Debe crear, reconocer o asignarle a un beneficiario alterno el derecho a recibir todo o parte de los beneficios a pagarse con respecto a un participante del plan.

> 2. Debe especificar claramente el nombre y última dirección conocida del participante y de cualquier beneficiario alterno cubierto por la orden, la cantidad o porcentaje de los beneficios del participante que serán pagados por el plan a cada beneficiario alterno —o la manera en la que tal cantidad o porcentaje será determinado— el número de pagos o el período durante el cual la orden aplica y el nombre de cada plan sujeto a la orden.

> 3. No puede requerir que un plan provea algún tipo o forma de beneficios o cualquier opción no provista por el plan.

> 4. No puede requerir que un plan provea beneficios mayores (determinados a base de su valor actuarial) a los provistos bajo los términos de dicho plan.

> 5. No puede requerir que se le pague a un beneficiario alterno beneficios que deban serle pagados a otro beneficiario alterno en virtud de otra Orden de Relaciones Domesticas Calificada.

Véase, sección 206 (d) de ERISA, *supra.*

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

### III

Sin lugar a duda, el recurso de *certiorari* es el vehículo procesal adecuado para procurar la revisión de la *Resolución* recurrida, de conformidad con la Regla 32(B) de nuestro Reglamento, *supra.* Ello, por tratarse de una *Resolución* final dictada por el foro primario en un caso de jurisdicción voluntaria. Así las cosas, luego de evaluar el recurso, a la luz de los criterios de nuestra Regla 40, *supra,* concluimos que procede ejercer nuestra discreción

revisora para revocar el dictamen recurrido, debido a que se cometió el error señalado por la peticionaria. Veamos.

Mediante el único señalamiento de error formulado, la peticionaria adujo que el foro primario erró al declarar No Ha Lugar la solicitud de expedición de una QDRO, al amparo de la sección 206(d) de la Ley ERISA, *supra*. Esencialmente, Sólivan Sánchez argumentó que una QDRO únicamente puede ser emitida por un tribunal con jurisdicción en casos en que existe, como en el caso ante nos, una escritura de divorcio ante notario y una estipulación y acuerdos sobre divorcio por consentimiento mutuo. Tiene razón.

Tal y como discutiéramos en nuestra exposición del derecho aplicable, según las disposiciones pertinentes de la Ley ERISA, una QDRO es la herramienta apropiada para disponer apropiadamente la división de una cuenta de retiro 401k, como resultado de un divorcio. Máxime, cuando el excónyuge a favor de quien se hará la división figura como recipiente alterno del plan, así como en consideración a que los excónyuges se divorciaron por consentimiento mutuo ante notario y una de sus estipulaciones provee para la mencionada división de activos.

Así también, tratándose de un remedio que existe de conformidad con legislación federal que ocupa el campo en esta materia,[10] llama a nuestra atención que la jurisprudencia federal expresamente reconoce que un QDRO tiene que ser emitido por *un tribunal.* De este modo, nos resulta forzoso concluir que la peticionaria tiene derecho al remedio solicitado, por lo que correspondía que el foro *a quo* emitiera la QDRO que esta le solicitó.

En virtud de lo antes expuesto, procede revocar el dictamen recurrido. De forma cónsona, corresponde emitir la QDRO que la peticionaria solicitó en el caso de epígrafe y para la cual proveyó un

---

[10] Véase *Kennedy v. Plan Adm'r for Du Pont Sav. and Inv. Plan*, 555 U.S. 285, 298-299 (2009).

proyecto de orden,[11] para la consideración y evaluación del foro primario.

**IV**

Por los fundamentos que anteceden, expedimos el auto discrecional solicitado y revocamos la *Resolución* recurrida. En consecuencia, se le ordena al Tribunal de Primera Instancia, Sala Superior de Caguas, que emita la Orden de Relaciones Domésticas Calificada o *Qualified Domestic Relations Order*) que la parte peticionaria solicitó en virtud de la Petición de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[11] Entrada Núm. 7 del caso núm. CG2026CV00085 del SUMAC. (Anejo).